BLUE HERON NURSERIES, L.L.C., et al., Appellees,

v.

FUNK et al., Appellants.

[Cite as *Blue Heron Nurseries, L.L.C. v. Funk*, 186 Ohio App.3d 769, 2010-Ohio-876.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 24745.

Decided March 10, 2010.

Leland D. Cole, for appellees.

Todd M. Raskin, John T. McLandrich, and Frank H. Scialdone; and Robert G. Konstand, for appellants.

CARR, Presiding Judge.

{¶ 1} Appellants, William Funk and Bath Township, appeal the judgment of the Summit County Court of Common Pleas. This court reverses.

I

{¶ 2} On June 22, 2007, appellees, Blue Heron Nurseries, L.L.C., and Hortpro, Inc. ("Blue Heron"), filed a motion seeking declaratory judgment and injunctive relief against appellants, William Funk and Bath Township ("the township"). Blue Heron specifically sought a declaration that it was engaged in the practice of "agriculture" under R.C. 519.21(A) and thus was exempt from the township's residential zoning restrictions. The named defendants in the complaint were Bath Township and Funk, who serves as the township's zoning inspector, as well as the duly elected trustees of the township. On July 25, 2007, the township filed an answer and counterclaim in which it argued that Blue Heron's operations constituted sales, marketing, and storage in a single-family zoning district where neither retail nor commercial operations were permitted. The controversy in this case involves Blue Heron's operation located at 5117 Medina Road in Bath Township. Blue Heron also maintains an operation at 3680 Everett Road in Bath Township but the township does not take issue with Blue Heron's activity at this location. On April 8, 2009, the Summit County Court of Common Pleas found that Blue Heron's operation on Medina Road constituted an agricultural use that is protected from township zoning by R.C. 519.21(A).

{¶ 3} The township appeals the judgment of the trial court, raising one assignment of error.

## II

## ASSIGNMENT OF ERROR

The trial court erred when it held that plaintiff/appellee Blue Heron Nurseries LLC was engaged in agriculture under Ohio R.C. [ ] 519.21(A) at its Medina Road location.

{¶ 4} Bath Township claims that the trial court erred when it ruled that Blue Heron was engaged in the practice of agriculture pursuant to R.C. 519.21(A). This court agrees.

{¶ 5} Generally, a determination granting or denying declaratory relief is one of degree and is reviewed for an abuse of discretion. *Bilyeu v. Motorists Mut. Ins. Co.* (1973), 36 Ohio St.2d 35, 37, 65 O.O.2d 179, 303 N.E.2d 871; *Mid–Am. Fire & Cas. Co. v. Heasley,* 113 Ohio St.3d 133, 2007-Ohio-1248, 863 N.E.2d 142, ¶ 13–14. However, in this case, we are not confronted with a discretionary determination. Rather, the question whether Blue Heron is using the land at its Medina Road location for agricultural purposes pursuant to R.C. 519.21(A) is a question of law. Therefore, we review the trial court's determination under a de novo standard of review. *Pierson v. Wheeland,* 9th Dist. No. 23442, 2007-Ohio-2474, 2007 WL 1489814, ¶ 10. When reviewing a matter de novo, this court does not give deference to the trial court's decision. *Eagle v. Fred Martin Motor Co.,* 157 Ohio App.3d 150, 2004-Ohio-829, 809 N.E.2d 1161, ¶ 11.

{¶ 6} In its motion for a declaratory judgment, Blue Heron claimed that it used and maintained its land for agricultural purposes pursuant to R.C. 519.21(A), which states:

Except as otherwise provided in division (B) of this section, sections 519.02 to 519.25 of the Revised Code confer no power on any township zoning commission, board of township trustees, or board of zoning appeals to prohibit the use of any land for agricultural purposes or the construction or use of buildings or structures incident to the use of agricultural purposes of the land on which such buildings or structures are located, including buildings or structures that are used primarily for vinting and selling wine and that are located on land any part of which is used for viticulture, and no zoning certificate shall be required for any such building or structure.

{¶ 7} Pursuant to R.C. 519.01, the term "agriculture" includes "farming; ranching; aquaculture; apiculture; horticulture; viticulture; animal husbandry, including, but not limited to, the care and raising of livestock, equine, and fur-bearing animals; poultry husbandry and the production of poultry and poultry products; dairy production; the production of field crops, tobacco, fruits, vegetables, nursery stock, ornamental shrubs, ornamental trees, flowers, sod, or mushrooms; timber; pasturage; any combination of the foregoing; the processing,

drying, storage, and marketing of agricultural products when those activities are conducted in conjunction with, but are secondary to, such husbandry or production."

{¶ 8} In *Dairy Farmers of Am., Inc. v. Wilkins,* 101 Ohio St.3d 100, 2004-Ohio-321, 802 N.E.2d 627, the Supreme Court of Ohio confronted the issue whether an agricultural cooperative that purchased raw milk and processed it into dairy products was engaged in agriculture for the purposes of qualifying for a tax exemption pursuant to R.C. 5739.01(E). In deciding that case, the Supreme Court adopted the dictionary definition of "production," which defines the term as " '1a: something that is produced naturally or as the result of labor and effort. * * * 2a: the act or process of producing, bringing forth, or making. * * * b: the creation of utility: the making of goods available for human wants. * * * 5: The total output of a commodity.' " *Wilkins* at ¶ 19, quoting Webster's Third New International Dictionary (1986) 1810.

{¶ 9} In order for the zoning exception set forth in R.C. 519.21(A) to apply to a piece of land, the land must primarily be used for agricultural purposes. See *Siebenthaler Co. v. Beavercreek Twp. Bd. of Zoning Appeals,* 2d Dist. No. 09–CA–36, 2009-Ohio-6595, 2009 WL 4829834, at ¶ 42–44. It follows that if the primary use of a piece of land is to market agriculture products, the exception set forth in R.C. 519.21(A) is not applicable.

{¶ 10} On appeal, the township contends that when a nursery not only maintains nursery plants that are virtually all for immediate sale and those plants are predominately shipped in from other farms, a nursery is not engaged in agriculture for the purposes of R.C. 519.21(A). Blue Heron argues that it is engaged in agriculture pursuant to R.C. Chapter 519 because the ongoing process of maintaining the stock to ensure that it continues to grow constitutes production.

{¶ 11} Blue Heron opened in 2006 on Medina Road in Bath Township. Commencing their operation involved clearing and grading the land, having some debris hauled away, and having trees, shrubs, and plants hauled in. The trial court found that the trees on the premises are primarily "balled and burlapped" and most other shrubs and plants are in containers. Blue Heron has a tree farm at the Everett Road location in the township from which some of its tree stock originates. Almost all the nursery stock sits upon the ground in these containers and much is covered in mulch, soil, or gravel. The plants are typically propagated at various other locations and are then stored and sold from the Medina Road location. Blue Heron has erected several greenhouses at its Medina Road location that allow it to keep plants and shrubs through the winter months.

{¶ 12} Kaan Aydin, the nursery manager at Blue Heron, testified that he is "responsible for everything that goes on, the husbandry and the ordering, and I deal with customers." Aydin testified that less than two percent of the stock at the Medina road location is in the ground or in the soil. When asked on cross-examination if there were items at the Medina Road location that were "provided from third-party nurseries that you didn't·grow," Aydin testified that "everything originated from a different nursery." Aydin testified that Blue Heron sells approximately 30 percent of its stock each season and cares for the rest all year round. Aydin indicated that the stock inventory stays on the property for an extended period of time and that his responsibility is to keep the nursery stock alive, fertilized, and free of pests or weeds. Aydin stated his responsibilities include shifting the stock into larger containers or bigger balls with burlap as it grows, and putting the containers into mulch, soil, or gravel to ensure hydration.

{¶ 13} Blue Heron presented the testimony of Brent D. Hunt, an official with the Ohio Department of Agriculture, who testified that the Medina Road location is considered to be a "growing site" as well as a "sales site." Kenneth Cochran, who is employed by the Ohio State University at the Ohio Agricultural Research and Development Center, also testified on behalf of Blue Heron. Cochran testified that Blue Heron is called an above-ground or container nursery, which is different from a traditional in-ground nursery. Cochran testified that above-ground nurseries are becoming more popular in the industry because they can operate from smaller parcels of land.

{¶ 14} In ruling that Blue Heron was engaged in agriculture at its Medina Road location, the trial court noted that Blue Heron presented "[a]mple evidence of husbandry and product production." The trial court also stated that the township presented "no evidence of the existence of a sales staff; no evidence of a sales building with cash registers, plant catalogs and rest rooms for customers; no evidence of signage on the property except for signs on each plant identifying the plant and the price of the plant." However, the township introduced photographs that depict advertisement signs on the road, which read "BLUE HERON NURSERY SALE 20–50% OFF" and "ALL TREES 20% OFF." The township also presented evidence that Blue Heron advertised in the local newspaper. In this newspaper advertisement, Blue Heron gave a description of its stock, indicated that it maintained standard business hours, and informed the public that it engaged in both "Pickup & Delivery."

{¶ 15} The evidence suggests that Blue Heron is engaged in commercial business at its Medina Road location and is not primarily engaged in agriculture pursuant to R.C. 519.21(A). In determining whether the activity at a location is agricultural in nature for the purposes of R.C. 519.21(A), this court has held that the question whether the nursery stock originated at the location at issue is an

important consideration. *Marik v. K.B. Compost Servs., Inc.* (Jan. 26, 2000), 9th Dist. No. 19393, 2000 WL 109155. While it is evident that the employees at Blue Heron's Medina Road location spend a great deal of time skillfully nurturing and maintaining the stock, the overwhelming majority of the stock originates from other locations. Aydin specifically testified that while production occurs in the form of propogation and division, "everything" originates from other nurseries. Furthermore, the fact that the stock at the Medina Road location is primarily stored in burlap sacks or containers suggests that Blue Heron has prepared the items for transportation and sale. As the trial court noted, each plant is individually priced for immediate sale. Blue Heron publicizes its sales with both road signs and advertisements in the local newspaper. In light of these facts, this court is reluctant to conclude that Blue Heron's primary purpose at its Medina Road location is engaging in agriculture as set forth in R.C. 519.21(A).

{¶ 16} The trial court noted in its journal entry that the township conceded in its closing argument that Blue Heron presented evidence to establish that their operation involves the production and husbandry of nursery stock, ornamental shrubs, ornamental trees, flowers and other plants. A review of the transcript reveals that the township, in an exchange with the trial court during its closing argument, merely acknowledged the fact that some production was taking place on the premises. The township quickly clarified that while "there is some production going on," the primary function of the Medina Road location was to sell the stock. While this court acknowledges that above-ground nurseries are becoming more popular and could possibly constitute engaging in agriculture for the purposes of R.C. 519.21(A), the specific facts of this case indicate that Blue Heron's primary function at its Medina Road location was commercial in nature. It follows that the township's sole assignment of error is sustained.

## III

{¶ 17} The township's sole assignment of error is sustained. The judgment of the Summit County Court of Common Pleas is reversed, and the cause is remanded for further proceedings consistent with this decision.

Judgment reversed
and cause remanded.

WHITMORE and MOORE, JJ., concur.